```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA              CRIMINAL ACTION

VERSUS                                NO: 06-325

DEVAUGHAN SMITH                       SECTION: "J"(4)
```

**ORDER AND REASONS**

Before the Court is Petitioner Devaughn Smith ("Smith")'s **Motion to Vacate Under 28 U.S.C. 2255 (Rec. Doc. 112)**. Later he submitted an **Amended Motion to Vacate Under 28 U.S.C. 2255 (Rec. Doc. 117)**. The government filed a **Response/Memorandum in Opposition (Rec. Doc. 120)**. Smith submitted a **Reply and Objection to Government's Memorandum in Opposition (Rec. Doc. 128)**. Smith also filed a **Supplement to his Motion to Vacate Under 28 U.S.C. 2255**, which included a **Motion to Subpoena Cell Phone Records of Federal Agents (Rec. Doc. 131)**.

**PROCEDURAL HISTORY AND BACKGROUND FACTS:**

On August 16, 2006, Kenner Police Detective Kevin Treigle ("Detective Treigle") arranged for his confidential informant Robert Boyd ("Boyd") to purchase from Smith, $100 worth of cocaine base ("crack"). Prior to Boyd's meeting with Smith, the detectives searched Boyd's person for any illegal contraband or currency. The search produced nothing. The detectives also

provided Boyd with a transmitter, which allowed Detective Treigle
to listen to the conversation between Smith and Boyd. The
conversation was not recorded. Once the money and crack were
exchanged, Boyd handed Detective Treigle the crack. Smith was not
arrested at the time. Rather, Detective Treigle conducted a
"buy/walk" investigation where the confidential informant would
make an illegal narcotics purchase from a target and the target
is not arrested. The purpose of the "buy/walk" investigation is
to gather intelligence and information on a particular target. On
August 29, 2006, when surveiling Smith, detectives stopped him
due to a traffic violation. A K-9 unit inspected Smith's car and
alerted to the driver's side door. Detective Treigle searched the
Impala's interior and located cocaine on the floorboard. The
detectives arrested Smith and a search of Smith's person produced
$1,000 in United States currency.

Lamont Lee ("Lee") previously purchased cocaine from Smith.
Also, Lee knew Boyd and Boyd's good friend and fellow drug user
Tom Brown ("Brown"). Brown knew Smith for approximately ten years
and purchased both crack and cocaine from Smith and Lee. Smith
approached Lee with a request to kill Boyd and Brown. Based on
rumors, Smith believed that Brown and Boyd were "ratting" against
him to local law enforcement. In fact, Brown was not cooperating
with local law enforcement at the time. Smith promised to pay Lee

in the form of cocaine for completing the murders. The cocaine payments would be in installments over a period of time. Smith wanted both murders to take place at the same time. The murder-for-hire plot was sometimes discussed over cell phones and at other times, Smith and Lee discussed the murder-for-hire plot face-to-face after arranging their meeting over the phone. Sometimes, Smith would call Lee to discuss the murder-for-hire, other times Lee would call Smith.

After Smith's release from jail stemming from the August 29, 2006 arrest, he was ready to "[g]o ahead with it." Lee had no problem killing Boyd because Lee "didn't care too much for him." Lee, however, did not want to kill Brown and decided to contact the Federal Bureau of Investigation ("FBI"). Lee informed the FBI that Smith wished to hire him to murder Brown. On September 1, 2006, the FBI confirmed Lee's story by recording a consensual phone conversation between Smith and Lee. They discussed the murder-for-hire plot relating to Brown and Boyd and drug dealing. Specifically, they discussed: (1) the form of payment; (2) what type of weapon would be used to kill Brown and Boyd; and (3) how the entire murder-for-hire plot should remain secret. On September 4, 2006, the FBI recorded a second consensual phone conversation between Smith and Lee. Smith discussed his preference that the murders took place in Orleans Parish because

witnesses would be hard to find. Smith and Lee discussed that both Brown and Boyd would be killed with a .40 caliber gun. Smith instructed Lee to get rid of the anticipated murder weapon by throwing it into the Mississippi River. Smith instructed Lee to wear gloves before the gun was ditched into the river. Also, Smith advised Lee to burn his clothing after killing Brown and Boyd. Brown and Boyd are still alive.

On November 3, 2006, a Federal Grand Jury indicted Smith for violating Title 18, United States Code, Section 1958(a), i.e. murder-for-hire. On that same day, an arrest warrant was issued and Smith was arrested on November 9, 2006. On November 13, 2006, Smith appeared before United States Magistrate Judge Louis Moore, Jr. On November 15, 2006, Smith pled "Not Guilty" at his arraignment and was detained.

On March 1, 2007, the government filed: (1) a motion for an expedited hearing; (2) a motion to continue trial; and (3) a notice of intention to use other crimes, wrongs or acts as evidence or to offer 404(b) evidence and incorporated memorandum. This Court granted the motion for expedited hearing and scheduled the matter for March 2, 2007. Smith responded to the government's notice of intention to use other acts evidence and its motion to continue. After a contested hearing, this Court granted the government's motion to continue resetting the trial date until

4

March 19, 2007.

On March 8, 2007, the government obtained a superseding indictment alleging that Smith committed an additional federal offense, i.e. distribution of less than 5 grams of cocaine base. Smith pled "Not Guilty" to the superseding indictment. On March 12, 2007, Smith filed a motion and incorporated memorandum to continue trial. The government responded the next day and on March 14, 2007, this Court denied the motion. On March 13, 2007, the government filed a "Bill of Information to Establish Prior Convictions" against Smith. On March 14, 2007, Smith filed his motion and incorporated memorandum to suppress evidence. The government responded to the motion. On March 15, 2007, Smith filed a motion for relief from improper joinder and alternatively for severance and incorporated memorandum. On March 16, 2007, the government responded and this Court denied the motion to sever. The suppression hearing occurred on March 16, 2007 and this Court denied Smith's motion. Also, this Court denied the government's 404(b) motion.

On Saturday, March 17, 2007, Smith appeared for re-arraignment but decided to proceed to trial. On March 20, 2007, a federal trial jury found Smith guilty as charged as to both counts of the superseding indictment: murder-for-hire and cocaine distribution. On June 27, 2007, this Court sentenced Smith to 300

months and 120 months imprisonment, respectively, as to counts I
and II of the Superseding Indictment. Smith timely filed his
notice of appeal on July 9, 2007. On June 5, 2008, the United
States Court of Appeals for the Fifth Circuit affirmed Smith's
conviction. Smith filed a petition for a rehearing with the Fifth
Circuit on June 19, 2008, however, it was denied on July 1, 2008.
On September 25, 2008, Smith filed a Petition for Writ of
Certiorari with the United States Supreme Court. On November 3,
2008, the Supreme Court denied Smith's petition. On November 9,
2009, Smith, who is confined to a federal correctional
institution in Pollock, Louisiana, signed the instant Motion to
Vacate, Set Aside, or Correct Sentence, and it was filed on
November 13, 2009.

### THE PARTIES' ARGUMENTS

**A.   Smith's Original Motion to Vacate**

The following issues were raised by Smith in his original
Motion (Rec. Doc. 112). He claims that these issues were not
originally raised by Smith's court-appointed attorney:

**1.   Petitioner did not receive a fair trial on the drug count
due to "rampant" evidence of drug dealing adduced in support
of an unrelated count tried at the same time.**

Smith explains that he did not have a fair trial because the
Government used evidence that was not "audible," which created

6

prejudice.

The government cites Fifth Circuit decisions, holding that "issues raised and disposed of in a previous appeal from an original judgement of conviction are not considered in §2255 motions." United States v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986); accord United States v. Webster, 392 F.3d 787, 791 (5th Cir. 2004). A §2255 petition is not the equivalent of an appeal nor can it take the place of an appeal. See United States v. Shaid, 937 F.2d 228, 231 (5th Cir. 1991). On appeal, Defendant already raised the allegation that he did not receive a fair trial due to the introduction of rampant evidence of drug dealing and the Fifth Circuit rejected it. Thus, Smith is barred from relitigating this issue.

**2.   The jury was not required to make a unanimous finding as to an element of murder-for-hire: the identity of the intended victim.**

Smith does not provide any supporting facts, merely stating that the evidence that should have been suppressed was used against him.

The government argues Defendant is barred from reurging this issue because he already raised it on appeal.

**3.   The evidence was insufficient to convict Smith.**

Smith generally states this issue in his original motion and

raises factual grounds for this argument for the first time in his Supplemental Memorandum (Rec. Doc. 117). According to Smith, federal agents breached policy and procedure by failing to search Boyd after the narcotics transaction to determine whether Boyd actually handed over the money to Smith.  Smith argues that, therefore, there is no proof the crack cocain was not a gift, "which [would] not constitute an agreement" (Rec. Doc. 117 p. 5). Smith also complains that the U.S. presented no physical evidence to corroborate Detective Treigle's testimony concerning the events that took place before informant Boyd engaged in a narcotics transaction with Smith.  In support, Smith relies on the fact that Detective Treigle did not have continuous visual contact on the subjects at the time.

The government alleges that sufficiency of the evidence claims are not cognizable on a collateral motion under section 2255. Even if this Court was to reach merits of Smith's claims, he would not prevail. In this case, there was substantial, indeed overwhelming, evidence to convict Smith as detailed in the trial transcripts and summarized by this memorandum. Detective Treigle testified to what he heard through the wire worn by the informant.  Smith cannot establish any cause or prejudice which would overcome his procedural default for not raising this particular issue on appeal.

4.    **Defendant is entitled to entrapment instruction where there is sufficient evidence from which a reasonable jury could find entrapment.**

Smith does not provide supporting facts in his original Motion but raises this issue again in his Amended Motion.

5.    **Counsel did not raise the foregoing issues and was therefore ineffective.**

Smith does not elaborate on this issue in his original Motion but discusses it in detail in his amended version.

The government asserts that Defendant is "barred from raising jurisdictional and constitutional claims for the first time on collateral review unless he demonstrates cause for failing to raise the issue on direct appeal and actual prejudice resulting from the error." United States v. Patten, 40 F.3d 774, 776 (5th Cir. 1994)(citation omitted). To satisfy the cause prong the movant must "show that some objective factor external to the defense prevented him from raising on direct appeal the claim he now advances." United States v. Guerra, 1996 U.S. App. LEXIS 24982, *10 (this opinion substituted by the court for withdrawn opinion of September 12, 1996, previously reported at: 94 F.3d 989, 1996 U.S. App. LEXIS 24159) (5th Cir. 1996) (internal quotations omitted). To satisfy the prejudice standard, the defendant must "demonstrate[] that, but for the error, he might

9

not have been convicted." Id. at 994. If a defendant fails to show cause for his procedural default, this Court "need not consider whether [the defendant] has shown prejudice." United States v. Flores, 981 F.2d 231, 236 (5th Cir. 1993).

The Government argues that Smith made no attempt to establish any cause for his failure to raise several issues on appeal. He, therefore, can overcome the procedural bar only if he can demonstrate that his convictions amount to a miscarriage of justice such as the conviction of one who is actually innocent. Smith is unable to demonstrate any "miscarriage of justice"; nowhere has he proven that he was convicted of crimes for which he was actually innocent.

**B.   Smith's Amended Petition**

This Court granted Smith's Motion to Amend his Motion to Vacate (Rec. Doc. 116), after which event Smith filed an Amended Motion (Rec. Doc. 117), containing the following arguments:

**6.   This Court lacked jurisdiction over Smith's murder-for-hire count.**

Smith argues that federal jurisdiction over the murder-for-hire count was manufactured. Jurisdiction was based on the fact that Smith's communication with the government informant, Lamont Patrick Lee, occurred over a cellular telephone. The phone call was initiated by Lee in an attempt to extort compensation from

Smith for murdering Robert Boyd. However, Smith argues that Lee intended to murder Robert Boyd regardless of whether Smith compensated him and the phone call was designed to steer him into committing the crime of murder-for-hire. Smith points to analogous federal appellate decisions that prohibit the government from manufacturing the basis for federal jurisdiction.

The government argues that Smith and Lee's discussions by cell phone prior to Lee ever contacting the FBI satisfied the jurisdictional element. The FBI directed Lee to call Smith only to confirm Lee's facts. Further, the government cites decisions that allow the government to take steps to ensure the existence of the interstate element of the offense, so long as the government is not unilaterally supplying the interstate element. Accordingly, the government argues that it did not manufacture jurisdiction.

**7.  Trial counsel's failure to object to evidence of other bad acts, crimes, or wrongs and/or failure to move for curative jury instructions constituted ineffective assistance of counsel.**

Smith argues that when he opposed the government introducing evidence of a drug transaction between Smith and Boyd at the trial of his murder-for-hire charge, the government "vindictively" obtained a superseding indictment which added the

11

drug sale as a separate count. Smith attempted to sever the two counts because otherwise inadmissible evidence on the murder-for-hire charge would prejudice him. The evidence was offered through the testimony of Jefferson Parish Deputy Kevin Triegle. Smith argues this testimony was not based on firsthand knowledge, but rather on the unrecorded conversation between Smith and Boyd, and trial counsel should have objected. Smith further argues that trial counsel should have sought a more thorough curative jury instruction, namely requiring an affirmative answer from the jurors that they understood what Judge Barbier instructed them on.

The government argues that trial counsel's actions were not deficient nor can they be characterized as ineffective. Specifically, trial counsel moved for a mistrial after Detective Treigle testified that Smith had several narcotics convictions. She also objected and this Court struck the testimony from the record after giving appropriate curative jury instructions. Counsel also requested and this Court obliged to give the curative instruction again prior to jury deliberations.

8. **Trial counsel's failure to move to suppress statements of government witnesses on grounds of entrapment constituted ineffective assistance of counsel.**

At the time of trial, Smith insisted that there was only one

12

phone conversation rather than the two that the government
claimed there to have been. Further, trial counsel should have
moved to suppress statements relating to the calls on entrapment
grounds and her failure to do so rendered her assistance
ineffective.  Smith reasserts this argument in his Amended
Petition, adding that Informant Lee induced Smith to engage in
the murder-for-hire scheme (Rec. Doc. 117, pp. 19-20).

The government argues that there was no entrapment defense,
and if this Court had allowed a defense of entrapment, the
government would have introduced the very evidence that Smith
seeks to suppress. Entrapment requires a showing of inducement
and a lack of predisposition to commit the act without being
induced. The government argues that trial counsel implicitly
raised this defense at trial and the government sought to
introduce evidence of Smith's prior convictions to show
predisposition. However, this Court denied the government's
motion and implicitly found there was no entrapment. Therefore,
trial counsel could not have been ineffective for failing to move
to suppress these statements.

9.    **Trial counsel's failure to move to suppress telephone
      conversations on grounds of entrapment constituted
      ineffective assistance of counsel.**

Smith argues that the recording admitted into evidence

failed to meet the admissibility requirements laid out by the
Eight Circuit in U.S. v. McMillan, 508 F.2d 101, 104 (8th Cir.
1974), cert. denied, 421 U.S. 916. Specifically, Smith argues
that the recording failed to comply with the element requiring
that the conversation elicited be "made voluntarily and in good
faith without any kind of inducement." Id. Smith argues that
trial counsel's failure to file a motion to suppress the
recording constituted ineffective assistance of counsel because
he was "induced" by Informant Lee (Rec. Doc. 117 pp. 119-22).

The government argues as laid out in 8, supra. The
government does not directly address Smith's argument under U.S.
v. McMillan but does argue that the telephone conversations were
properly introduced at trial after a foundation was established
and pursuant to stipulation.

**10. Trial counsel's failure to file pre-trial motion *in limine*
to exclude evidence of other bad acts, crimes, or wrongs
constituted ineffective assistance of counsel.**

Smith argues that trial counsel was aware of the damaging
testimony that the government intended to offer, specifically
testimony from cooperating government witnesses motivated to
testify by their interest in obtaining leniency on their own
pending state or federal charges. The other bad acts, crimes, or
wrongs had nothing to do with the charges in Smith's indictment;

14

instead this evidence was used to attack his character. Counsel's failure to file a motion *in limine* to exclude testimony of Smith's prior bad acts constituted ineffective assistance of counsel.  In Smith's Amended Petition, he claims that "it is evident" that a motion *in limine* would have been granted (Rec. Doc. 117, p. 24).

The government argues that a motion *in limine* would not have prevented the evidence from coming in. It argues that intrinsic evidence, evidence of acts inextricably intertwined with the crime or part of a single criminal episode, is generally admissible and not subject to Rule 404(b). U.S. v. Freeman, 434 F.3d 369, 374 (5th Cir. 2005); U.S. v. Williams, 900 F.2d 823, 825 (5th Cir. 1990). This intrinsic evidence allows a jury to consider the whole story. U.S. v. Royal, 972 F.2d 643, 647 (5th Cir. 1992). The government argues that the drug dealing relationships with Lee, Boyd, and Brown served as the foundation for both counts of the superseding indictment and were necessarily intertwined with both counts. Trial counsel understood this and instead successfully focused on excluding evidence of Smith's prior felony narcotics convictions.

11. **Trial and Appellate counsel's failure to object and/or assert Smith's Sixth Amendment right to confront the government informant constituted ineffective assistance of**

**counsel.**

Smith asserts that the Government chose not to call informant Boyd as a witness, which deprived Smith from his constitutional right to confront his accuser. Smith argues that Crawford v. Washington, 541 U.S. 36 (2004), requires this Court to examine whether any prejudice resulted from counsel's failure to object on Confrontation Clause grounds. Smith argues that had his counsel raised the objection, he could have confronted Boyd on his testimonial statements and there would have been a difference in the outcome of the proceedings. This argument is raised again in Smith's Amended Petition (Rec. Doc. 117, p. 26) as well as his Supplemental Petition (Rec. Doc. 131, p. 2).

The government argues that Smith's Confrontation Clause argument must fail because it is general and lacks specificity. The government was not required to call Boyd to testify and the jury convicted Smith based on the testimony of Detective Treigle. Treigle listened to the conversation through an electronic monitoring device worn by Boyd. Treigle's testimony only included one statement made by Boyd which was objected to on hearsay grounds. The government argues that Boyd's statement was not prior testimony and there was no violation of the Confrontation Clause.

**12.  Trial and Appellate counsel's failure to raise and/or**

**investigate a <u>Brady</u> violation constituted ineffective assistance of counsel.**

Smith argues that the government neglected to disclose all exculpatory evidence pertaining to the phone calls, such as FBI internal paperwork and records pertaining to FBI cellular phone use. The failure of Smith's trial and appellate counsel to raise this issue or investigate it further rendered their assistance ineffective.

The government argues that there was no <u>Brady</u> violation. The evidence Smith seeks was not exculpatory nor material to his guilt or innocence. This information would have been available upon the proper request but the government was not withholding exculpatory information or evidence. Accordingly, there can be no ineffective assistance of counsel claim.

**13. Trial and appellate counsel's failure to object and/or raise the disparity of the crack/ powder ratio constituted ineffective assistance of counsel.**

Smith argues that because he was sentenced after the U.S. Sentencing Commission proposed  changes to the guidelines to Congress, trial and appellate counsel should have raised the disparity of the crack/powder ratio. Because they did not, Smith argues that he received ineffective assistance of counsel.

The government argues that the sentence of 300 months was

17

based on his status as a career offender. Smith's trial counsel reasonably decided not to object based on the disparity because it did not drive Smith's sentence. Trial counsel did argue that Smith should receive a sentence at the low end of the guidelines. Further, appellate counsel did not raise the issue on appeal because it was frivolous.

14. **Smith was denied his right to allocution and to present any information in mitigation of punishment.**

Smith argues that he was prejudiced by his inability to speak on his own behalf at his sentencing. His trial and appellate counsel did not raise this issue and it rendered their assistance ineffective.

The government argues that, assuming this were the case, violation of a defendant's right to allocution is not a predicate for *habeas* relief absent aggravating circumstances. However, the government argues that Smith was given an opportunity to speak, he chose not to, and his trial attorney spoke on his behalf. Further, appellate counsel was not ineffective for failing to raise a frivolous claim on appeal.

15. **Trial counsel failed to object and/or raise a "no adverse inference" instruction on Smith's election not to testify.**

Smith argues that his trial counsel was ineffective for failing to request a "no adverse inference" instruction and/or

failing to object when the Court did not give one. Smith argues
that the jury likely was influenced by his decision not testify
and perceived it as confirming the testimony against him.

The government argues that review of a failure to object to
jury instructions gets plain error review. Assuming, but not
conceding, that there was plain error, the government argues that
Smith cannot prove that his substantial rights were prejudiced.
The finding of prejudice is contingent on whether the ailing
instruction so infected the trial that the conviction violates
due process. U.S. v. Kibbe, 431 U.S. 145, 154 (1977). The
government argues that Smith cannot show that had his attorney
requested the "no adverse inference" instruction the outcome
would have been different.

## C.   Smith's Supplemental Petition

This Court granted Smith's Motion to Supplement to his
Motion to Vacate (Rec. Doc. 131).   In his supplement, Smith
raises several issues and urges two motions. The motions will be
discussed and addressed in the Discussion section of this Order.
The United States did not respond to this supplemental pleading.
Smith asserts the following.

## 16.   The evidence was insufficient to convict, and Smith attempts to introduce new evidence.

First, Smith alleges that Federal Agents breached policy and

procedure by failing to search Boyd and determine whether Boyd actually handed over the $100 to Smith in exchange for the narcotics.  Therefore, there is no proof that the 2.4 grams of crack was not a gift, "which does not constitute an agreement" (referencing Rec. Doc. 117 p. 5).

Second, Smith implies that the U.S. presented no evidence to corroborate Detective Treigle's testimony concerning the events that took place before informant Boyd engaged in a narcotics transaction with Smith.  In support, Smith relies on the fact that Detective Treigle did not have continuous visual contact on the subjects at the time.

Smith also attempts to introduce new evidence at this time. Smith now moves this Court to subpoena the November 4, 2006 cell phone records of prosecution witness Lamont Lee.  Smith alleges the records will demonstrate violations of due process and rights under the confrontation clause.  Smith re-alleges that the United States violated Brady by failing to turn over the records. In addition, Smith submits the Affidavit of Coretta Lane, which describes her account of Smith's August 29, 2006 arrest.

**17.  Smith did not receive a fair trial due to violations under Due Process and the Confrontation Clause.**

A.  *Due Process*

Smith claims he did not receive a fair trial.  Specifically,

he claims that certain phone records are inconsistent with respect to duration and timing when compared to testimony given against him, resulting in prejudice.  Smith next claims that his conviction was tainted "by suppressions, destruction, or alteration"of material evidence, which violated due process. Specifically, he accuses the government of altering phone records to "coincide with the testimony of SA Eric Davis."

B.    *Confrontation Clause*

As before, Smith claims his right to confront his accuser was violated because the state did not put informant Boyd on the stand.  Smith alleges that, as a result, the jury was unable to determine the essential elements that would allow a conviction to stand without a constitutional violation.

## DISCUSSION

"Relief under 28 U.S.C. 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir.1992) (*per curiam*) (citing United States v. Capua, 665 F.2d 1033, 1037 (5th Cir. 1981)). Analytically, this Court will subdivide Defendant's claims into (1) issues previously raised on appeal; (2) issues, other than ineffective assistance of counsel, not previously

raised on appeal; and (3) claims for ineffective assistance of counsel.

## I.   Issues Previously Raised by Defendant on Appeal

On appeal to the Fifth Circuit, Smith previously raised two of the foregoing issues: he argued that his drug and murder-for-hire charges should not have been tried together and that the jury should have been required to make a unanimous finding as to whose murder was allegedly planned. United States v. Smith, No. 07-30630, 2008 WL 2337299, *1 (5th Cir. June 05, 2008).

The Fifth Circuit jurisprudence makes it clear that issues previously raised and disposed of on appeal from an original judgment of conviction are not considered in section 2255 motions. U.S. v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986), cert. denied, 476 U.S. 1118 (1986) (citing United States v. Jones, 614 F.2d 80, 82 (5th Cir.1980)); U.S. v. Rocha, 109 F.3d 225, 229 (5th Cir. 1997) (citation omitted); U.S. v. Nation, 2007 WL 1289876, *1 (5th Cir. 05/03/2007); U.S. v. Webster, 392 F.3d 787, 791 (5th Cir. 2004). Smith is barred from relitigating these issued on collateral review. Thus, Smith is not entitled to relief based on these issues.

## II.  Issues, Other Than Ineffective Assistance of Counsel, Not Previously Raised on Appeal

Any "[r]elief under 28 U.S.C. § 2255 is reserved for

22

transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Walker, 68 F.3d 931, 934 (5th Cir. 1995) (citation omitted). Moreover, "[a] movant is barred from raising jurisdictional and constitutional claims for the first time on collateral review unless he demonstrates cause for failing to raise the issue on direct appeal and actual prejudice resulting from the error." United States v. Patten, 40 F.3d 774, 776 (5th Cir. 1994) (citation omitted). To satisfy the cause prong the movant must show that "'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." United States v. Guerra, 1996 U.S. App. LEXIS 24982, *10 (this opinion substituted by the court for withdrawn opinion of September 12, 1996, previously reported at: 94 F.3d 989, 1996 U.S. App. LEXIS 24159) (5th Cir. 1996) (citation omitted). To satisfy the prejudice standard, the defendant must show that, "but for the error, he might not have been convicted." Id. at 994. If a defendant fails to show cause for his procedural default, this Court "need not consider whether [the defendant] has shown prejudice." United States v. Flores, 981 F.2d 231, 236 (5th Cir. 1993). "This cause and actual prejudice standard presents 'a significantly higher hurdle' than the 'plain error'

23

standard" applied on direct appeal. <u>United States v. Shaid</u>, 937 F.2d 228, 232 (5th Cir. 1991) (quotation omitted). This rigorous standard is applied "in order to ensure that final judgments command respect and that their binding effect does not last only until 'the next in a series of endless postconviction collateral attacks.'" <u>Id.</u>

In this case, Smith made no attempt to establish any cause for his failure to raise several issues on appeal. He, therefore, can overcome the procedural bar only if he can demonstrate that his convictions amount to a miscarriage of justice such as the conviction of one who is actually innocent. Smith is unable to demonstrate any "miscarriage of justice;" nowhere has he proven that he was convicted of crimes for which he was actually innocent.

**A.   Sufficiency of Evidence**

In this Circuit, sufficiency of the evidence claims are not cognizable on a collateral motion under section 2255. <u>See</u> <u>Forrester v. United States</u>, 456 F.2d 905, 907 (5th Cir. 1972); <u>Mendoza v. United States</u>, 365 F.2d 268, 272 (5th Cir. 1966). Smith failed to raise an insufficiency of the evidence claim on appeal and did not show the requisite cause and prejudice to overcome the procedural default. Even if this Court was to reach the merits of Smith's claims, he still would not prevail.

A court determines whether there was sufficient evidence to convict by "examin[ing] the evidence as a whole and construe it in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict." United States v. Charles, 469 F.3d 402, 406 (5th Cir. 2006) (citation omitted). Specifically, "[t]he jury is free to chose among reasonable constructions of the evidence and the evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." United States v. Ferguson, 211 F.3d 878, 882 (5th Cir. 2000). A jury can rely on all testimony to support its decision to convict, unless said testimony "is incredible or otherwise unbelievable on its face." See United States v. Gavero, 530 F.2d 666, 670 (5th Cir. 1976).

In this case, there was substantial, indeed overwhelming, evidence to convict Smith as detailed in the trial transcripts and summarized by this memorandum (Rec. Doc. No. 87, pp. 142-253); (Rec. Doc. No. 88, pp. 4-82). Smith's trial counsel twice moved pursuant to Rule 29 to test the sufficiency of the evidence and this Court denied the motions (Rec. Doc. No. 88, pp. 85-87, 108). Even Smith concedes that the evidence was "sufficient to support the jury's verdict" (Rec. Doc. No. 117, p. 36). Smith failed to explain how the evidence presented was insufficient and

did not raise any factual or legal allegations to support his claim. Smith cannot establish any cause or prejudice which would overcome his procedural default for not raising this particular issue on appeal.

B.   **The government did not "manufacture jurisdiction" in order to prosecute Smith for murder-for-hire.**

Smith claims that the government informant, Lee, "steered" him to arrange to commit the murder-for-hire (Rec. Doc. No. 117, pp. 10-12). Smith's allegation is simply not the case. When confronted with an allegation of manufactured jurisdiction , a court should not "condemn the fact that the government informer was involved in the interstate element of the crime." United States v. Perrin, 580 F.2d 730, 736 (5 Cir. 1978) (citation omitted). The government, however, cannot simply request that its informant "unilaterally supply the interstate element" so that a local crime becomes a federal offense. See id.   For example, the informant could not cross the Sabine River at the government's direction "merely to call one of the co-conspirators [from another state]." Id.   Meaning, federal jurisdiction exists where the interstate element is "not furnished *solely* by undercover agents, and there is no question of any attempt to contrive jurisdiction." United States v. Pecora, 693 F.2d 421, 424 (5th Cir. 1982) (emphasis added). Finally, "[t]he fact that a

government agent took steps to ensure the existence of the
interstate element of the offense and the fact that satisfaction
of the interstate element was the sole reason for the taking of
those steps do not cause the indictment to be subject to
dismissal." United States v. Clark, 62 F.3d 110, 114 (5th Cir.
1995).

Smith, in his Reply and Objection to Government's Memorandum
in Opposition (Rec. Doc. 128, p. 7), relies on United States v.
Archer to support his claim of manufactured jurisdiction.  486
F.2d 670 (2d Cir. 1973).  However, Archer has no application
here.  In Archer, a federal agent crossed state lines solely to
place an interstate phone call in order to establish federal
jurisdiction. Id. at 681.  That court found it significant that
the interstate phone calls were induced by a Government "plant of
misinformation" which provoked a call that the defendant "would
not otherwise have made."  Id. at 682.

Here, no government agent crossed state lines to place a
call.  Smith approached Lee with a request to kill Boyd and Brown
(Rec. Doc. No. 87, pp. 209-10). Smith and Lee sometimes used cell
phones to discuss the details of the murder-for-hire plot  (Rec.
Doc. No. 87, 213-214). Smith would also use his cell phone to
arrange face-to-face meetings with Lee to discuss the plot (Rec.
Doc. No. 87, pp. 213-214). Smith's use of his cell phone to call

27

Lee provided the interstate element needed to invoke federal jurisdiction (Rec. Doc. No. 88, p. 80).  Smith's actions satisfied the jurisdictional element prior to Lee contacting the FBI (Rec. Doc. No. 87, p. 212). After Lee became a government informant, the FBI directed Lee to call Smith merely to confirm Lee's facts i.e. that Smith wanted to hire Lee to murder Boyd and Brown (Rec. Doc. No. 87, pp. 216-217, 227). Once again, Smith cannot establish any cause or prejudice that would overcome his procedural default.

Smith also argues that he need not show cause and prejudice to collaterally attack the "manufactured" federal jurisdiction because jurisdictional claims cannot be procedurally defaulted (Rec. Doc. 128, p. 10-11). However, it is unnecessary to reach this argument as this court finds that federal jurisdiction was not manufactured.

C.   **This Court gave Smith an opportunity to allocute at his sentencing hearing.**

At sentencing, a trial court must provide the defendant, counsel for defendant, and counsel for the government an opportunity to speak. See Fed. R. Crim. P. 32(i)(4)(A)(i-iii)(2010). A "violation of a defendant's right to allocution [is] not a predicate for habeas corpus relief absent aggravating circumstances." United States v. Reyna, 358 F.3d 344, 349 (5th

Cir. 2004) (citing, <u>Hill v. United States</u>, 368 U.S. 424 (1962)).

In fact, the Supreme Court recognized long ago that

> [t]he failure of a trial court to ask a defendant
> represented by an attorney whether he has anything to say
> before sentence is imposed is not of itself an error of the
> character or magnitude cognizable under a writ of habeas
> corpus. It is an error which is neither jurisdictional nor
> constitutional. It is not a fundamental defect which
> inherently results in a complete miscarriage of justice, nor
> an omission inconsistent with the rudimentary demands of
> fair procedure. It does not present exceptional
> circumstances where the need for the remedy afforded by the
> writ of *habeas corpus* is apparent.

<u>Hill v. United States</u>, 368 U.S. at 428 (quotation and citations
omitted).

Smith claims that the Court, the prosecutor, Smith's
counsel, or Smith never interacted in a manner that shows clearly
and convincingly that Smith was put on notice that he had the
right to speak regarding factors that might mitigate his
sentence.  Smith claims that if he had realized, prior to
sentencing, that the hearing was his final opportunity to so
speak, he would have "emphatically exercised his right to
allocution" (Rec. Doc. 128, p. 26 n.9).

Nothing in the record indicates that Smith made known his desire to speak on his behalf prior to sentencing.  In fact, Smith admits that the court afforded him the opportunity to allocute prior to sentencing (Rec. Doc. 128 p. 26).  Rule 32 is not violated simply because a defendant waives the opportunity to allocute and later regrets that decision.  Even assuming that Smith's right to allocution had been denied, Smith points to no aggravating circumstances that would entitle him to *habeas corpus* relief on these grounds.

### III. Ineffective Assistance of Counsel

Smith claims that his counsel was ineffective for several reasons. In his original petition Smith states generally that his counsel was ineffective for (1) failing to raise the issue of prejudice due to the "rampant" evidence of drug dealing, (2) general failure to move for suppression of the evidence; (3) failing to raise the insufficiency of evidence, and (4) failing to raise entrapment as a defense. Moreover, in his amended petition, Smith asserts that his counsel was ineffective due to (5) failure to object and/or move for proper curative instructions for other bad acts, crimes, or wrongs; (6) failure to suppress government witnesses statements based on grounds of entrapment; (7) failure to have telephone conversations suppressed based on grounds of entrapment; (8) failure to file a

motion in limine to bar evidence of other bad acts, crimes, or wrongs; (9) failing to object and/or raise the Confrontation Clause right to confront government informant; (10) failing to raise and/or investigate a Brady violation when the government neglected to disclose all exculpatory evidence pertaining to the September 4, 2006 phone calls; (11) failure to object and/or raise the disparity of the crack/powder ratio; and (12) failure to object and/or raise a "no adverse inference" instruction on Smith's election not to testify.

The burden of proof in habeas proceedings alleging ineffective assistance of counsel is on the petitioner. United States v. Chavez, 193 F.3d 375, 378 (5th Cir.1999) (citing Clark v. Collins, 19 F.3d 959, 964 (5th Cir.1994)). Specifically, the petitioner must prove two separate components. First, petitioner must show that counsel's performance was deficient in that the errors made by counsel were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). Second, the petitioner must show that the deficient performance prejudiced the defense, the errors made by counsel being "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

In determining whether counsel was deficient, this court

must apply a highly deferential standard to the examination of counsel's performance. Id. at 689. The analysis starts with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted). When deciding an actual ineffectiveness claim, this court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690.

To show prejudice resulting from counsel's deficient performance, petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

However, because both the deficiency of performance and the prejudice components are necessary to a claim of ineffective assistance of counsel, there is no need for a Court to address both components if a finding is made that the petitioner has made an insufficient showing on one. Id. at 697. Further, a court need not determine whether counsel's performance was deficient before examining whether the defendant suffered prejudice. Id. In fact,

32

"[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id.

With this in mind, this Court proceeds to review the specific "ineffective assistance of counsel"  issues raised by Smith.

**A.    Prejudice due to introduction of evidence of drug dealing and other prior bad acts, crimes, or wrongs**

Smith contends that counsel was ineffective to failing to question each individual juror to make sure "they adamantly understood" the judge's limiting instructions (Rec. Doc. 128 p. 13). "Juries are presumed to follow limiting instructions." United States v. Acosta, 475 F.3d 677, 683 (5th Cir. 2007). Also, "[a]ny possible prejudice could be cured with proper instructions and juries are presumed to follow their instructions." United States v. Bullock, 71 F.3d 171, 175 (5th Cir.1995).

The only specific argument Smith raises pertains to his motion for mistrial (Rec. Doc. No. 87, p. 159). Smith's counsel moved for a mistrial after government witness Detective Treigle testified that Smith had "several convictions for illegal narcotics" (Rec. Doc. No. 87, p. 159). Smith's counsel lodged an objection and this Court struck Detective Treigle's testimony from the record after giving an appropriate curative jury

33

instruction (Rec. Doc. No. 87, pp. 159-162). This Court did so again at defense counsel's request, prior to the commencement of jury deliberations (Rec. Doc. No. 88, pp. 101-102).

The Fifth Circuit held that "[t]his Court was able to lessen the potential unfairly prejudicial impact of [Smith's] drug dealing by instructing the jury of its limited relevance" (Rec. Doc. No. 97-1, p. 3). Trial counsel requested and the jury received the proper curative jury instructions. Counsel's actions were not deficient nor should they be characterized as ineffective.

**B.    Failure to raise the insufficiency of evidence**

Sufficiency of the evidence claims must be raised on appeal and are not cognizable on a collateral motion under section 2255 absent a showing of cause and prejudice justifying the procedural default. See Forrester v. United States, 456 F.2d 905, 907 (5th Cir. 1972); Mendoza v. United States, 365 F.2d 268, 272 (5th Cir. 1966).   Smith therefore submits that he received ineffective assistance of counsel because appellate counsel failed to raise the insufficience of evidence at that time.  However, the record demonstrates substantial evidence against Smith, sufficient to support the jury's verdict.  Therefore, Smith was not prejudiced by appellate counsel's failure to raise this frivolous issue on appeal. Appellate counsel was not ineffective.

34

**C.    Entrapment**

Entrapment is recognized as "an affirmative defense that requires a defendant to show he was induced to commit a criminal act by a government agent and that he was not predisposed to commit the act without the inducement." United States v. Thompson, 130 F.3d 676, 689 (5th Cir. 1997) (footnote omitted). "Predisposition focuses on whether the defendant was ...willing to commit the offense before first being approached by government agents." Thompson, 130 F.3d at 690 (quotations and citation omitted). The government may rely on various factors to prove predisposition, such as: "[the] desire for profit; demonstrated knowledge and experience with the criminal activity under investigation; the character of the defendant, including post criminal history; whether the government first suggested criminal activity; and the nature of the inducement offered by the government." United States v. Reyes, 239 F.3d 722, 739 (5th Cir. 2001) (citations omitted).  Inducement is described as "the creative activity of law enforcement officials in spurring an individual to crime." Thompson, 130 F.3d at 690 (quotation and citation omitted).

1.  *Trial counsel was not ineffective for failing to raise entrapment as a defense.*

Smith ignores the fact that any entrapment defense would

have resulted in the introduction of the very evidence he seeks to suppress.  Had the affirmative defense been approved, the government would have introduced additional evidence, such as Smith's prior felony drug convictions, to prove that he was predisposed to commit the crimes and that he was not induced.

In fact, Smith's counsel implicitly raised the entrapment defense at trial; however, the government countered and sought to introduce Smith's prior convictions to show predisposition (Rec. Doc. No. 88, pp. 51-52). This Court implicitly found that there was no entrapment and denied the government's motion (Rec. Doc. No. 88, p. 52).  The government did not induce Smith to commit his crimes; he did so on his own (Rec. Doc. No. 87, pp. 209-210).

2.   *Counsel was not ineffective for failing to file a motion to suppress witnesses statements and telephone conversations based on alleged entrapment violation.*

Smith argues that because he was allegedly entrapped, counsel was ineffective by not moving to suppress the September 1, 2006 and September 4, 2006 recorded conversations (Rec. Doc. No. 117, pp. 19-22). The conversations that Smith referred to were properly introduced at trial after a foundation was established and pursuant to stipulation (Rec. Doc. No. 87, pp. 228-230).

Smith provides no evidence to overcome the presumption that

36

the stipulation was sound trial strategy.  The stipulation was likely calculated to reduce the amount of damaging testimony heard by the jury during trial.  At best, Smith's argument as to the content of the statements relates to the weight of the evidence, rather than the admissibility of the evidence (see Rec. Doc. 117, pp. 19-20). Therefore, assistance of counsel was not ineffective.

**D.    Trial counsel was not ineffective for not filing a Motion *In Limine* to bar evidence of Smith's prior bad acts related to drug dealing.**

The evidence Smith now objects to was "intrinsic" to the charges against him, and therefore a motion *in limine* would not have changed the outcome in this matter.  Intrinsic evidence, evidence of acts "inextricably intertwined" with the crime or part of a single criminal episode, is generally admissible and not subject to Rule 404(b). U.S. v. Freeman, 434 F.3d 369, 374 (5th Cir. 2005); U.S. v. Williams, 900 F.2d 823, 825 (5th Cir. 1990). This intrinsic evidence allows a jury to consider the defendant's behavior in the context of the whole story. U.S. v. Royal, 972 F.2d 643, 647 (5th Cir. 1992).

Smith is a convicted drug dealer and sold drugs to Lee, Boyd, and Brown. The drug dealing relationships served as the foundation for both counts of the superseding indictment and were

necessarily intertwined with both counts. Trial counsel
understood this and instead successfully focused on excluding
evidence of Smith's prior felony narcotics convictions.

E.   **Trial and appellate counsel were not ineffective for failing
     to raise a <u>Crawford</u> objection because the out-of-court
     statement in question was not testimonial.**

"The Confrontation Clause guarantees a criminal defendant
the right to cross-examine the witness against him." <u>United
States v. Jimenez</u>, 464 F.3d 555, 559 (5th Cir. 2006) (citation
omitted).  It "prohibits the admission of an out-of-court
testimonial statement unless the witness is unavailable and the
defendant has had a prior opportunity to cross-examine the
witness." <u>United States v. Acosta</u>, 475 F.3d 677, 680 (5th Cir.
2007) (citation omitted).  "The term testimonial "applies at a
minimum to prior testimony at a preliminary hearing, before a
grand jury, or at a former trial; and to police interrogations."
<u>Crawford v. Washington</u>, 541 U.S. 36, 68 (2004).

Out of court statements may be deemed testimonial if "made
under circumstances which would lead an objective witness
reasonably to believe that the statement would be available for
use at a later trial." <u>Crawford v. Washington</u>, 541 U.S. 36, 52
(2004).  However, courts recognize an exception for statements
made by an informant to the suspect in the course of the

investigation.  <u>United States v. Crespo-Hernandez</u>, 186 Fed. Appx. 419, 425 (5th Cir. 2006) (holding that informant's statement was not testimonial when, "under the constant direction of DEA agents, the [confidential informant] was coordinating a drug transaction, directing his statements to the co-conspirators themselves").

Smith's Confrontation Clause argument must fail because it is general in nature and lacks specificity.  To the extent it criticizes the government for not calling Boyd to the witness stand, the government was not obligated to do so. A jury convicted Smith of drug distribution based on the testimony of Detective Treigle.  From his surveillance position and due to the electronic monitoring equipment Boyd wore, Detective Treigle listened to the drug deal conversation between Smith and Boyd (Rec. Doc. No. 87, pp. 152-153). The defense subjected Detective Treigle to near unfettered cross-examination (Rec. Doc. No. 87, pp. 164-195). Smith's conviction was due to Detective Treigle's testimony, which "produced strong evidence of Smith's guilt on the drug charge. . . " (Rec. Doc. No. 97-1, p.3).

Detective Treigle's testimony produced only one statement made by Boyd during the drug sale. Detective Treigle recalled how Boyd commented, "Well, this is more than what, we ordered $100 worth of crack cocaine" (Rec. Doc. No. 87, p. 152). Smith's

counsel objected on hearsay but not Confrontation Clause grounds (Rec. Doc. No. 87, p. 152). Boyd's spontaneous statement merely clarified Smith's subsequent statement, "Take it, I don't want to ride dirty!" Meaning, Smith did not want to ride with excess crack in his vehicle (Rec. Doc. No. 87, p. 153).  Boyd's statement was not prior testimony, nor was it elicited as a result of a police interrogation. There was no violation of the Confrontation Clause. Accordingly, Smith did not receive ineffective assistance of counsel.

**F.   Trial and appellate counsel were not ineffective for failing to raise and/or investigate an alleged Brady violation where Smith claims the government neglected to disclose all exculpatory evidence pertaining to the 9/4/2006 phone calls.**

Smith alleges that the government violated its duty to turn over exculpatory evidence. As required under Brady v. Maryland, 373 U.S. 83 (1963), "the prosecution must disclose to a defendant exculpatory evidence that is material either to his guilt or to his punishment." Powell v. Quarterman, 536 F.3d 325, 335 (5th Cir. 2008) (citations omitted).  A Brady violation occurs only when a defendant proves that: "(1) the evidence at issue was favorable to him; (2) the evidence was willfully or inadvertently suppressed by the government; (3) and prejudiced resulted." Id. at 335.  Additionally, a defendant must show that "there is a

40

reasonable probability that the outcome of the trial would have
been different had the prosecution disclosed the evidence."
United States v. Garcia, 567 F.3d 721, 735 (5th Cir. 2009)
(internal quotation and citation omitted).

Smith's amended petition suggests that he was entitled to
receive certain cell phone records, as well as "internal
paperwork that was allegedly filled out that allows the FBI to
make cell phone calls from their office without first obtaining
an order of the Court . . ." (Rec. Doc. No. 117, p. 28).
However, Smith provides no explanation as to how that evidence
would be favorable to him or result in a different outcome.

The government did not withhold any exculpatory information
and/or evidence from the defense. The evidence Smith seeks was
not exculpatory nor material to his guilt or innocence.
Accordingly, both trial and appellate counsel's actions were not
deficient where they chose not to raise any Brady  violation
claims.

G.   **Trial and appellate counsel were not ineffective for not
     objecting to the crack cocaine/powder cocaine ratio.**

An attorney's actions are reasonable if she "research[es]
relevant facts and law, or make[s] an informed decision that
certain avenues will not be fruitful." United States v. Fields,
565 F.3d 290, 294 (5th Cir. 2009) (citations omitted). With

respect to sentencing issues, prejudice is established if a
defendant demonstrates with reasonable probability that but for
his attorney's errors with respect to sentencing matters, he
would receive less time in prison. See <u>United States v. Grammas</u>,
376 F.3d 433, 438-439 (5th Cir. 2004).  A "counsel's inability to
foresee future pronouncements which will dispossess the Court of
power to impose a particular sentence which is presently thought
viable does not render counsels' representation ineffective . . .
. Clairvoyance is not a required attribute of effective
representation." <u>Fields</u>, 565 F.3d at 295 (citations and internal
quotations omitted).

Smith alleges that had trial counsel lodged an objection
specifically referencing the disparities in federal guidelines
sentences between cocaine base and powder cocaine, the outcome of
his sentence would have been different (Rec. Doc. No. 117, pp.
31-32). However, Smith overlooks that he was sentenced to 300
months because of the seriousness of his offenses, and because he
is a career offender.  Several past convictions resulted in
parole and suspended sentences, but each time Smith returned to a
life of crime (Rec. Doc. No. 89, pp. 5-6).  Although trial
counsel did argue that Smith should receive a sentence at "the
low end of the guideline range" (Rec. Doc. No. 89, pp. 3-4), she
made a reasonable decision to not object based on any cocaine

base/powder disparity because the disparity clearly did not drive
Smith's sentence.  The sentence would not have been more
favorable to Smith had counsel raised the objection. Similarly,
appellate counsel chose not to raise this issue on appeal because
it was frivolous. Accordingly, neither trial nor appellate
counsel's actions were deficient.

**H.   Trial counsel was not ineffective when she did not request**
**an "adverse inference" instruction.**

"A criminal defendant has a Fifth Amendment right for a
judge, upon the defendant's request, to instruct a jury not to
make any adverse inferences based on the defendant's election not
to testify."  United States v. Percel, 553 F.3d 903, 909 (5th
Cir. 2008)(citing Carter v. Kentucky, 450 U.S. 288, 300 (1981).
Without a specific request from a defendant, "[a] district court
has broad discretion in framing the instructions to a jury and a
reviewing court will not reverse unless the instructions taken as
a whole do not correctly reflect the issues and law." United
States v. McKinney, 53 F.3d 664, 676 (5th Cir. 1995).

Smith concedes that he "did not request the no-adverse
inference instruction or object to the District Court's omission
of this instruction from the pattern jury charge"[1] (Rec. Doc. No.

_____

[1] The "adverse inference instruction" appears in section 1.05
of the Fifth Circuit Pattern Jury Instructions. Fifth Circuit
Pattern Jury Instructions § 1.05 (2001). Pattern instructions

117, p.35).  Smith failed to object to this Court's jury
instructions; therefore, any review would be governed by the
plain error standard. Fed. R. Crim. P. 52(b). Specifically, plain
error exists if Smith proves "(1) that an error occurred; (2)
that the error was plain, which means clear or obvious; (3) the
plain error must affect substantial rights; and (4) not
correcting the error would seriously affect the fairness,
integrity, or public reputation of judicial proceedings." United
States v. Saldana, 427 F.3d 298, 304 (5th Cir. 2005). Here, there
was no error because this Court's discretion to fashion an
acceptable jury charge was not constrained by Smith's request for
an adverse inference instruction.

    Assuming but not conceding, that there was plain error,
Smith would not be able to prove that his substantial rights were
prejudiced. In the jury instruction context, a finding of
prejudice is contingent upon "whether the ailing instruction by
itself so infected the entire trial that the resulting conviction
violates due process, not merely whether the instruction is
desirable, erroneous, or even universally condemned." United
States v. Kibbe, 431 U.S. 145, 154 (1977) (internal and external
quotations and citations omitted). Smith's trial produced

_____

serve merely as guides for a trial court's use and are not
mandatory.

overwhelming evidence of his guilt (Rec. Doc. No. 87, pp. 142-253); (Rec. Doc. No. 88, pp. 4-82). The majority of the evidence was direct in nature and incorporated Smith's own words. Smith cannot show that, had his attorney requested the inclusion of the instruction, it would have changed anything. Accordingly, trial counsel was not ineffective.

**IV.   Smith's Supplemental Petition: Motions**

**A.   Motion to Show Cause as to the failure of the Government to support [their] allegations of why the trial and appellate counsel were not ineffective as counsel under <u>Strickland v. Washington</u>**

Smith contends that the United States "waived the opportunity to challenge any argument that Smith raised in his Original/Amended Motion and Reply Brief, based on ineffective assistance of counsel" (Rec. Doc. 131, p. 1).  Smith appears to argue that the government's failure to disclose an affidavit from his court-appointed trial and appellate counsel "affirms" that his attorneys were "ineffective" under <u>Strickland v. Washington</u>.

There is no merit to this suggestion.  Furthermore, the government has already responded to Smith's ineffective assistance of counsel claims (Rec. Doc. 120).  The motion is denied.

**B.   Motion to Subpoena Cell Phone Records of Federal Agents**

Smith asks this court to subpoena cell phone records of Informant Lee for September 4, 2006 and to disclose those of Agent Eric Davis.  Further, Smith requests that the United States disclose the cell phone records of all F.B.I. agents whose phones were used in the investigation.  Smith claims his Fifth Amendment rights were violated because, without the records pertaining to Lee, Smith was unable to properly confront Lee at trial (Rec. Doc. 131-2, p. 19).

Smith contends that the records would clarify the number, duration, and/or time of the calls referred to at trial.  Even assuming the records would show inconsistencies in the testimony, there is nothing to suggest that those details would have any effect on the outcome of the trial. This motion is also denied.

Because none of the arguments advanced by Smith support his Motions to Vacate Pursuant to § 2255, **IT IS ORDERED** that these **motions (Rec. Docs. 112 and 117)** are **DENIED**.

New Orleans, Louisiana this the 6th day of October, 2010.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE