UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 06-325 |
| DEVAUGHAN SMITH | SECTION: "J"(4) |

**ORDER AND REASONS**

Before the Court is Petitioner Devaughn Smith (Smith)'s *Motion to Reopen Post Conviction Relief Under Rule 60(b)(4), (6).* **(Rec. Doc. 153)** Having considered the motion and memorandum, the record, and the applicable law, the Court finds that Smith's motion should be **DENIED** for the reasons set forth more fully below.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

On August 16, 2006, Kenner Police Detective Kevin Treigle (Detective Treigle) arranged for his confidential informant Robert Boyd (Boyd) to purchase from Smith, $100 worth of cocaine base (crack). Prior to Boyd's meeting with Smith, the detectives searched Boyd's person for any illegal contraband or currency. The search produced nothing. The detectives also provided Boyd with a transmitter, which allowed Detective Treigle to listen to the conversation between Smith and Boyd. The conversation was not recorded. Once the money and crack were exchanged, Boyd handed

Detective Treigle the crack. Smith was not arrested at the time. Rather, Detective Treigle conducted a "buy/walk" investigation where the confidential informant would make an illegal narcotics purchase from a target and the target is not arrested. The purpose of the "buy/walk" investigation is to gather intelligence and information on a particular target. On August 29, 2006, when surveiling Smith, detectives stopped him due to a traffic violation. A K-9 unit inspected Smith's car and alerted to the driver's side door. Detective Treigle searched the Impala's interior and located cocaine on the floorboard. The detectives arrested Smith and a search of Smith's person produced $1,000 in United States currency.

Lamont Lee (Lee) previously purchased cocaine from Smith. Also, Lee knew Boyd and Boyd's good friend and fellow drug user Tom Brown (Brown). Brown knew Smith for approximately ten years and purchased both crack and cocaine from Smith and Lee. Smith approached Lee with a request to kill Boyd and Brown. Based on rumors, Smith believed that Brown and Boyd were "ratting" against him to local law enforcement. In fact, Brown was not cooperating with local law enforcement at the time. Smith promised to pay Lee in the form of cocaine for completing the murders. The cocaine payments would be in installments over a period of time. Smith wanted both murders to take place at the same time. The murder-

for-hire plot was sometimes discussed over cell phones and at other times, Smith and Lee discussed the murder-for-hire plot face-to-face after arranging their meeting over the phone. Sometimes, Smith would call Lee to discuss the murder-for-hire, other times Lee would call Smith.

After Smith's release from jail stemming from the August 29, 2006 arrest, he was ready to "[g]o ahead with it." Lee had no problem killing Boyd because Lee "didn't care too much for him." Lee, however, did not want to kill Brown and decided to contact the Federal Bureau of Investigation (FBI). Lee informed the FBI that Smith wished to hire him to murder Brown. On September 1, 2006, the FBI confirmed Lee's story by recording a consensual phone conversation between Smith and Lee. They discussed the murder-for-hire plot relating to Brown and Boyd and drug dealing. Specifically, they discussed: (1) the form of payment; (2) what type of weapon would be used to kill Brown and Boyd; and (3) how the entire murder-for-hire plot should remain secret. On September 4, 2006, the FBI recorded a second consensual phone conversation between Smith and Lee. Smith discussed his preference that the murders took place in Orleans Parish because witnesses would be hard to find. Smith and Lee discussed that both Brown and Boyd would be killed with a .40 caliber gun. Smith instructed Lee to get rid of the anticipated murder weapon by

3

throwing it into the Mississippi River. Smith instructed Lee to wear gloves before the gun was ditched into the river. Also, Smith advised Lee to burn his clothing after killing Brown and Boyd. Brown and Boyd are still alive.

On November 3, 2006, a Federal Grand Jury indicted Smith for violating Title 18, United States Code, Section 1958(a), i.e. murder-for-hire. On that same day, an arrest warrant was issued and Smith was arrested on November 9, 2006. On November 13, 2006, Smith appeared before United States Magistrate Judge Louis Moore, Jr. On November 15, 2006, Smith pled "Not Guilty" at his arraignment and was detained.

On March 1, 2007, the government filed: (1) a motion for an expedited hearing; (2) a motion to continue trial; and (3) a notice of intention to use other crimes, wrongs or acts as evidence or to offer 404(b) evidence and incorporated memorandum. This Court granted the motion for expedited hearing and scheduled the matter for March 2, 2007. Smith responded to the government's notice of intention to use other acts evidence and its motion to continue. After a contested hearing, this Court granted the government's motion to continue resetting the trial date until March 19, 2007.

On March 8, 2007, the government obtained a superseding indictment alleging that, in addition to murder-for-hire, Smith

4

committed the federal offense of distributing less than 5 grams of cocaine base. Smith pled "Not Guilty" to the superseding indictment. On March 12, 2007, Smith filed a motion and incorporated memorandum to continue trial. The government responded the next day and on March 14, 2007, this Court denied the motion. On March 13, 2007, the government filed a "Bill of Information to Establish Prior Convictions" against Smith. On March 14, 2007, Smith filed his motion and incorporated memorandum to suppress evidence. The government responded to the motion. On March 15, 2007, Smith filed a motion for relief from improper joinder and alternatively for severance and incorporated memorandum. On March 16, 2007, the government responded and this Court denied the motion to sever. The suppression hearing occurred on March 16, 2007 and this Court denied Smith's motion. Also, this Court denied the government's 404(b) motion.

On Saturday, March 17, 2007, Smith appeared for re-arraignment but decided to proceed to trial. On March 20, 2007, a federal trial jury found Smith guilty as charged as to both counts of the superseding indictment: murder-for-hire and cocaine distribution. On June 27, 2007, this Court sentenced Smith to 300 months and 120 months imprisonment, respectively, as to counts I and II of the Superseding Indictment. Smith timely filed his notice of appeal on July 9, 2007. On June 5, 2008, the United

States Court of Appeals for the Fifth Circuit affirmed Smith's conviction. Smith filed a petition for a rehearing with the Fifth Circuit on June 19, 2008, however, it was denied on July 1, 2008. On September 25, 2008, Smith filed a Petition for Writ of Certiorari with the United States Supreme Court. On November 3, 2008, the Supreme Court denied Smith's petition.

On November 9, 2009, Smith, who is confined to a federal correctional institution in Pollock, Louisiana, signed a Motion to Vacate, Set Aside, or Correct Sentence, which was filed on November 13, 2009. The Court subdivided the claims presented in the motion into three categories–those that Smith raised on direct appeal, those other than ineffective assistance of counsel that he did not raise on direct appeal, and ineffective assistance of counsel–and analyzed each category in turn. First, the Court found that Smith had previously raised on direct appeal his challenges to (1) the joint trial of the drug and murder-for-hire charges and (2) the permissibility of a divided verdict as to whom Smith planned to murder. Accordingly, the Court held that Smith was barred from asserting those arguments in a section 2255 motion. Next, the Court addressed the claims other than ineffective assistance of counsel that Smith did not raise on direct appeal. First, the Court dismissed Smith's claims regarding the sufficiency of the evidence because Smith did not

show cause for failing to raise the issue on direct appeal or prejudice from the alleged error. Second, the Court dismissed Smith's claim regarding the government's alleged manufacturing of jurisdiction for the murder-for-hire charge because the Court found that the government did not manufacture jurisdiction. Third, the Court dismissed Smith's claim of an alleged lack of opportunity to allocute at his sentencing because the Court found that Smith waived that opportunity. Finally, the Court addressed Smith's ineffective assistance of counsel claim. The claim arose from alleged (1) prejudice due to introduction of evidence of drug dealing and other prior bad acts, crimes, or wrongs; (2) failure to raise the insufficiency of the evidence; (3) failure to raise entrapment defense; (4) failure to file a motion to suppress witness statements and phone conversations based on alleged entrapment violation; (5) failure to file a motion in limine to bar evidence of Smith's prior bad acts; (6) failure to call certain witnesses to testify at trial; (7) failure to raise an alleged <u>Brady</u> violation deriving from documents pertaining to the September 4, 2006, phone call; (8) failure to object to the crack cocaine/powder cocaine ratio; and (9) failure to request an "adverse inference" instruction. The Court analyzed each basis for the claim and found that they lacked merit. Accordingly, the Court denied the motion on October 6, 2010. The Court later

denied certificate of appealability.

On October 21, 2010, Smith filed a Motion for Reconsideration in relation to the Court's denial of his section 2255 motion. (Rec. Doc. 137) Smith asserted that he filed the motion within the requisite time period for the motion to be considered pursuant to Rule 59 of the Federal Rules of Civil Procedure, but noted that the Court could consider it under Rule 60 if it disagreed. In the motion, Smith argued that the Court's previous order and judgment were void because (1) the government did not present evidence in support of its position; (2) Smith was not granted an evidentiary hearing; and (3) the Court answered Smith's motion on behalf of his trial and/or appellate counsel, which allegedly is an abuse of discretion. The Court denied the motion on October 29, 2010, finding that it had previously addressed the arguments and that Smith failed to present proper grounds for a Rule 59 motion.

Also on October 21, 2010, Smith appealed as pauper the Court's denial of his section 2255 motion. The Fifth Circuit concluded, however, that Smith had failed to make a substantial showing of the denial of a constitutional right and denied his motion for a certificate of appealibility with respect to those claims properly before it. The Fifth Circuit then concluded that other claims were waived because they were either not presented

on appeal or presented for the first time on appeal.

Beginning in February 2015, Smith began filing motions in this case. First he filed a Motion to Compel Under Jencks. (Rec. Doc. 149) He then filed a Motion to Obtain Trial Exhibits. (Rec. Doc. 150) This Court denied both motions. (Rec. Docs. 151, 152) Finally, Smith filed the instant *Motion to Reopen Post Conviction Relief Under Rule 60(b)(4), (6)* **(Rec. Doc. 153)** on May 11, 2015.

## THE PARTIES' ARGUMENTS

Smith argues that the Court should reopen his petition for postconviction relief pursuant to Rule 60(b)(4), (6). First, Smith argues that his claims are properly advanced in a Rule 60 motion, i.e., that the motion is not a second or successive habeas petition. In the motion, Smith asserts that the Court failed to address all of the claims for relief posed in his previous section 2255 motion when it denied the motion. Accordingly, Smith argues that his petition constitutes a challenge to a defect in the process of his prior petition rather than a challenge of the merits of such petition. Second, Smith argues that, because the Court failed to address all of his claims, he was denied due process of law. Smith further argues that this denial renders the previous judgment "void" within the meaning of Rule 60(b)(4). Finally, because Rule 60(b)(4) motions need not be filed within any particular time period, Smith

9

contends that his motion is timely although filed approximately four and one-half years after the judgment it addresses. Moreover, because he is proceeding pro se and, therefore, was previously unaware of "the possibility of a Rule 60(b) motion," he argues that there is good reason for the delay.

## DISCUSSION

A district court has jurisdiction to consider a Federal Rule of Civil Procedure Rule 60(b) motion in a habeas proceeding pursuant to § 2255 unless the motion constitutes a successive § 2255 motion. United States v. Hernandez, 708 F.3d 680, 681 (5th Cir. 2013); see also Gonzalez v. Crosby, 545 U.S. 524, 531-36 (2005)(discussing when a district court has jurisdiction to consider Rule 60(b) motions filed in habeas proceedings); Holley v. Terrell, No. 10-1787, 2013 WL 2243835, at *2 (E.D. La. May 21, 2013)(explaining the district courts' jurisdictional limitations in considering Rule 60(b) motions in habeas proceedings). A court will construe a Rule 60(b) motion as a successive § 2255 motion if it advances one or more substantive claims. Hernandez, 708 F.3d at 681. If, however, the Rule 60(b) motion attacks a procedural defect in the court's handling of the previous § 2255 motion, then the court may consider the motion. Id.

Here, Smith argues that this Court has jurisdiction to consider his Rule 60(b)(4), (6) motion because the motion

challenges a defect in this Court's disposition of his habeas petition–namely, an alleged failure to consider all of his claims for relief. The Court agrees. See Hunt v. United States, 287 Fed. App'x 828, 829 (11th Cir. 2008)(holding that petitioner's Rule 60(b) motion asserting that the district court failed to address all of the claims presented in his habeas petition was not a successive habeas petition and the district court had jurisdiction to consider it); Spitznas v. Boone, 464 F.3d 1213, 1225 (10th Cir. 2006)(same); Augustine v. Cain, No. 04-3238, 2009 WL 4505937, at *1 (E.D. La. Nov. 25, 2009)(Vance, J.)(noting that a second or successive petition is one that raises a claim that the petitioner could have raised in a previous petition or that otherwise constitutes an abuse of writ).

The Court will first address Smith's Rule 60(b)(4) motion. Federal Rule of Civil Procedure 60(b)(4) permits a party to seek relief from void judgments. See FED. R. CIV. P. 60(b)(4). A court may set aside a judgment under Rule 60(b)(4) "1) if the initial court lacked subject matter or personal jurisdiction; and 2) if the district court acted in a manner inconsistent with due process of law." Callon Petroleum Co. v. Frontier Ins. Co., 351 F.3d 204, 208 (5th Cir. 2003). Circumstances under which a court acts so inconsistently with due process so as to render a judgment void are rare "because due process in civil cases

11

usually requires only proper notice and service of process and a court of competent jurisdiction." Id. at 210. "[P]rocedural irregularities during the course of a civil case, even serious ones, will not subject the judgment to collateral attack." Id. (quoting New York Life Ins. Co. v. Brown, 84 F.3d 137, 143 (5th Cir. 1996)). "Rule 60(b)(4) motions have no set time limit; in [the Fifth Circuit], they need not even be made within a 'reasonable time.'" Id. at 208 n.3.

Here, the Court finds that, contrary to Smith's allegations, the Court did not fail to consider certain of Smith's ineffective assistance of counsel claims. First, Smith argues that the Court did not consider his claim that the superseding indictment was "vindictively obtained." Quite simply, this is not a claim. Second, the Court did not fail to address Smith's claim regarding his counsel's failure to suppress certain telephone calls and witness statements. See (Rec. Doc. 134, pp. 37-38). Third, the Court did not fail to address Smith's claim regarding the use or admission of tape recordings. See (Rec. Doc. 134, pp. 36-37). Fourth, the Court did not fail to address Smith's claim regarding an alleged denial of his right to confront his accuser. See (Rec. Doc. 134, pp. 38-40). Fifth, the Court did not fail to address Smith's claim regarding an alleged Brady violation from failure to disclose internal documents. See (Rec. Doc. 134, pp. 40-41).

Consequently, the Court finds that Smith's Rule 60(b)(4) motion is without merit and must be dismissed.

The Court will now address Smith's Rule 60(b)(6) motion. Rule 60(b)(6) motions are available only when an extraordinary circumstance justifies relief. See FED. R. CIV. P. 60(b)(6). A motion for relief pursuant to Rule 60(b)(6) must be filed within a "reasonable time" following the judgment or order to which it relates. FED. R. CIV. P. 60(c). Here, Smith's motion was filed approximately four and one-half years after the order and judgment it challenges. Smith argues that this delay is reasonable because he is proceeding pro se and was previously unaware of the availability of the Rule 60(b) motion. The Court notes, however, that Smith filed a similar motion for reconsideration pursuant to Rule 59 of the Federal Rules of Civil Procedure less than one month after the Court denied his petition. (Rec. Doc. 137) Moreover, in that motion, Smith discussed the availability of Rule 60 motions for relief. Id. at 2 (praying that the Court consider the motion for reconsideration pursuant to Rule 60 if the Court found that the Rule 59 motion was untimely). The Court therefore concludes that the asserted cause for Smith's delay is false. Thus, Smith's Rule 60(b)(6) motion is denied as untimely. See FED. R. CIV. P. 60(c); United States v. Green, 348 F.Appx. 917, 918 (5th Cir. 2009); see also

13

Middleton v. McDonald, 388 F.3d 614, 617 (8th Cir. 2004) (holding that a "three-year delay was not reasonable"). Accordingly,

**IT IS HEREBY ORDERED** that Smith's *Motion to Reopen Post Conviction Relief Under Rule 60(b)(4), (6)* **(Rec. Doc. 153)** is **DENIED.**

New Orleans, Louisiana this the 10th day of June, 2015.

*[signature]*

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE